[Cite as *In re D.W.*, 2011-Ohio-5778.]

STATE OF OHIO    )     IN THE COURT OF APPEALS
            )ss:    NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT  )

IN RE:   D.W.         C.A. No.   26011
     J.W.
     C.W.
                APPEAL FROM JUDGMENT
                ENTERED IN THE
                COURT OF COMMON PLEAS
                COUNTY OF SUMMIT, OHIO
                CASE Nos.  DN09-11-0905
                       DN09-11-0906
                       DN09-11-0907

DECISION AND JOURNAL ENTRY

Dated: November 9, 2011

BELFANCE, Presiding Judge.

**{¶1}** Appellant, Diana W. ("Mother"), appeals from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated her parental rights to her three minor children and placed them in the permanent custody of Summit County Children Services Board ("CSB"). For the reasons that follow, this Court affirms.

I.

**{¶2}** Mother is the natural mother of D.W., born December 23, 1999; J.W., born March 28, 2005; and C.W., born April 6, 2007. The fathers of the children are not parties to this appeal. Mother and her children have had involvement with children services agencies and the police dating back to August 2001 because, on several occasions, Mother's young children were found away from home without any adult supervision. Two of those incidents resulted in Mother being convicted of child endangering.

{¶3} Mother has a long history of mental health problems, for which she has been hospitalized repeatedly, but has not maintained consistent treatment. The record does not fully detail the most recent event that led to the complaint in this case, but Mother testified that she had spent the day combining her psychiatric medications with alcohol and was behaving erratically. Although she had recently been released from the hospital and was taking psychiatric medication, Mother was not receiving ongoing mental health treatment and was feeling suicidal. Mother admittedly set fire to the house where she had been living with the children, and then left in her car with the children. Mother had told her sister that she was going to kill herself and, apparently after leaving the children alone in a motel room, became involved in a high-speed car chase with her sister. During the chase, Mother was apprehended by police and arrested and the children were found alone at the motel. The children were immediately removed from Mother's custody and she has not seen them since.

{¶4} Mother was later charged with offenses that included aggravated arson and three counts of child endangering. Although Mother's mental competence was initially at issue, after treatment and regulation of her psychiatric medications, she was ultimately found competent to stand trial. Mother later entered pleas of guilty to attempted aggravated arson, vandalism, and child endangering and was sentenced to a total term of four years' incarceration.

{¶5} D.W., J.W., and C.W. were placed with their maternal aunt, but she later decided that she could not provide a home for all three children. The children were placed together with foster parents, and CSB eventually moved for permanent custody. Following a hearing on the motion, the trial court terminated Mother's parental rights and placed the children in the permanent custody of CSB.

{¶6} Mother filed a timely appeal. In lieu of a merit brief, her appellate counsel filed a brief in accordance with *Anders v. California* (1967), 386 U.S. 738, in which he asserted that there were no meritorious issues to raise on Mother's behalf and that an appeal would be frivolous. Counsel moved this Court to accept the *Anders* Brief in lieu of a merit brief and to permit him to withdraw from the case.

II.

Possible Issue For Review

"THE TRIAL COURT ERRED IN FINDING THAT A GRANT OF PERMANENT CUSTODY IN THE BEST INTEREST OF D.W., J.W., AND C.W. WAS SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."

{¶7} Mother's counsel presented one potential issue for review but concluded that it has no merit. After a thorough review of the evidence before the trial court, this Court agrees.

{¶8} Before a juvenile court can terminate parental rights and award to a proper moving agency permanent custody of a child, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the children are abandoned, orphaned, have been in the temporary custody of the agency for at least 12 months of the prior 22 months, or that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) the grant of permanent custody to the agency is in the best interest of the children, based on an analysis under R.C. 2151.414(D). See R.C. 2151.414(B)(1) and 2151.414(B)(2); see, also, *In re William S.* (1996), 75 Ohio St.3d 95, 99.

{¶9} The trial court found that the first prong of the test was satisfied because all three children had been in the temporary custody of CSB for more than 12 of the prior 22 months and

that finding is fully supported by the record. Thus, the only potential issue is a challenge to the trial court's best interest finding.

{¶10} When determining whether a grant of permanent custody is in the children's best interests, the juvenile court must consider all the relevant factors, including those enumerated in R.C. 2151.414(D): the interaction and interrelationships of the children, the wishes of the children, the custodial history of the children, and the children's need for permanence in their lives. See *In re R.G.*, 9th Dist. Nos. 24834 & 24850, 2009-Ohio-6284, at ¶11.

{¶11} Since their removal from Mother's custody on November 21, 2009, the children had not seen Mother due to her incarceration and a counselor's concern that the oldest child, D.W., might be further traumatized by direct contact with Mother. D.W. had witnessed Mother pouring lighter fluid in the house before she started the fire. Although Mother had put all three children in her car before she started the fire, D.W. got out of the car and came into the house to try to stop her. D.W. had been traumatized by the fire, in which she lost everything she owned, including her pet fish. D.W. also felt helpless and responsible for being unable to stop Mother from starting the fire. D.W.'s counselor explained that D.W. had long played the role of caretaker for her younger siblings and Mother, as Mother had struggled with mental health problems and alcohol addiction for many years.

{¶12} D.W. had been diagnosed with post traumatic stress disorder and was experiencing nightmares, flashbacks, and numerous behavioral problems. D.W. told her counselor that Mother's mental health and drinking problems dated back to when J.W. was born in 2005. During counseling, D.W. wrote a letter to Mother, in which she explained that she will always love Mother, but that the foster parents "treat us right * * * like what you used to do a long time ago." The counselor believed that D.W. recognized that she could no longer live with

Mother and needed to move on. Another counselor testified that D.W. will continue to need ongoing counseling for at least another year and that it was important for her to live in a stable environment with a caregiver who provided consistency and firm boundaries.

{¶13} The caseworker testified that none of the children had asked to see Mother since they were removed from her custody. They had been placed together throughout the case, however, and remained strongly bonded to each other. The children were happy and well adjusted in their current placement, where their foster parents provided them with a secure, stable, and structured home. The children had expressed a desire to stay in the foster home and the foster parents were interested in adopting all three children.

{¶14} At the time of the hearing, the children's custodial history included a period of eighteen months living outside Mother's custody and having virtually no contact with her. During that time, the children had adjusted well to living in a stable environment. Mother, on the other hand, was incarcerated and would remain incarcerated for the next several years. It was unclear whether her mental health problems had stabilized, as she had been diagnosed with various mental illnesses over the years, had been in and out of counseling, and had taken a variety of medications to try to regulate her moods. Mother had been diagnosed most recently with bipolar disorder and, although she testified that her current medication was regulating her mood swings, she was not engaged in any mental health counseling at that time. It was also unclear whether Mother would continue with mental health treatment after her release from prison.

{¶15} The children were in need of a legally secure permanent placement and Mother could not provide a home for them at the time of the hearing or in the foreseeable future. The children's fathers had abandoned them and there were no suitable relatives available to take

long-term custody of them. They were currently living in a suitable, stable home with the foster parents, who were willing to adopt all three children if the trial court terminated Mother's parental rights. The trial court reasonably concluded that a legally secure permanent placement for the children could be achieved only through a grant of permanent custody to CSB.

{¶16} The trial court's conclusion that permanent custody was in the best interests of D.W., J.W., and C.W. was fully supported by the evidence presented at the hearing. The possible issue for review presented by Mother's counsel lacks merit. Moreover, this Court has carefully reviewed the entire record and concludes that the evidence clearly and convincingly supports the judgment of the trial court. As part of that review, the questions that Mother raised in a letter submitted to this Court of whether she received effective assistance of trial counsel and reasonable reunification efforts by CSB have been considered. That review has failed to reveal any issues that support a reversal of the judgment of the trial court.

{¶17} Mother's appeal is without merit and frivolous under *Anders v. California* (1967), 386 U.S. 738. The request by Mother's attorney for permission to withdraw is granted.

III.

{¶18} Mother's appeal is without merit. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

EVE V. BELFANCE
FOR THE COURT

WHITMORE, J.
MOORE, J.
CONCUR

APPEARANCES:

BRENDON J. KOHRS, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.